# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| LEWIS WILLIAM STEWART,<br><br>                Plaintiff,<br><br>v.<br><br>ROMEO ARANAS, *et al.*,<br>                Defendants. | 3:17-cv-00132-MMD-CLB<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Lewis William Stewart ("Stewart") against Defendants Dr. Romeo Aranas, former NDOC Director James G. Cox, Dr. Francisco M. Sanchez, and Warden Brian Williams (collectively referred to as "Defendants").[2] Currently pending before the court is Defendants' motion for summary judgment. (ECF No. 47). Stewart opposed the motion (ECF No. 55) and Defendants replied (ECF No. 56). Additionally, Stewart filed an addendum to his opposition (ECF No. 58). For the reasons stated below, the court recommends that Defendants' motion for summary judgment (ECF No. 47) be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

Stewart is formerly an inmate in the custody of the Nevada Department of Corrections ("NDOC"). At the time relevant to this action, Stewart was incarcerated at the Southern Desert Correctional Center ("SDCC"). (ECF No. 4). Proceeding *pro se*, Stewart filed the instant civil rights action pursuant to 42 U.S.C. § 1983, alleging multiple counts and seeking monetary, declaratory, and injunctive relief. (*Id.*)

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] Stewart also named Cheryl Burson, Angie Jones, Sean Su, and S.L. Clark as defendants in this lawsuit. (*See* ECF No. 4). The claims against Defendants Burson, Jones, Su, and Clark were dismissed as service was not effectuated. (*See* ECF No. 37).

According to Stewart's Complaint (ECF No. 4), the alleged events giving rise to his claims are as follows: Stewart was incarcerated at SDCC from November 2002 through August 2015. (*Id.* at 5.) In early 2002, Stewart began experiencing discomfort in his lower abdominal and back area. (*Id.*) Stewart made written requests to SDCC medical staff on numerous occasions. (*Id.*) After unusual delays and more persistent requests, Aranas, Clark, Jones, Sanchez, and Su saw Stewart. (*Id.* at 6.) Stewart was 70 years old when he began to experience even greater pain and discomfort. (*Id.*) Stewart complained to Aranas, Clark, Jones, Sanchez, and Su that he was having difficulties urinating, that he had to sit on the toilet to urinate, and that his short and irregular urine flows were very painful. (*Id.*) Stewart's pain became so severe that he had to curl in the fetal position to help alleviate the pain. (*Id.*) When Stewart saw Aranas, Clark, Jones, Sanchez, and Su, they did nothing to diagnose Stewart and limited their examinations to his vital signs and prodding his abdominal and kidney areas. (*Id.*) Aranas, Clark, Jones, Sanchez, and Su provided Stewart with generic medications that did not eliminate his pain. (*Id.*) Over a period of several months, Stewart continued to complain to those defendants about the severity of his pains and the inability to urinate regularly without discomfort. (*Id.*)

Between 2013 and 2015, Stewart experienced growing inflammation in his urethra, testicle, and abdominal areas. (*Id.* at 7.) Between 2014 and 2015, Stewart complained to defendants through kites and visits about his urination problems and slow, short flows. (*Id.*) Aranas, Clark, Jones, Sanchez, and Su did nothing. (*Id.*) As a result, Stewart complained to Burson, Cox, and Williams. (*Id.*)

In August 2015, SDCC prison officials sought to de-populate the institution. (*Id.* at 7-8.) Stewart sought and received approval to transfer to Warm Springs Correctional Center ("WSCC"). (*Id.* at 8.) Stewart endured an uncomfortable, eight-hour bus ride to WSCC. (*Id.*) Upon arrival at WSCC, the medical staff took one look at Stewart and began "immediate emergency care." (*Id.*) Stewart was pale, flushed, sweating, and unbalanced. (*Id.*) One of the nurses commented, "What the hell! How long has he been

like this?" (*Id.*) Stewart replied, "Too long. Please help me. I am in so much pain. I can't piss. Please help me." (*Id.*) At the time, Stewart was 73 years old. (*Id.*) Dr. Marsha Johns discovered that Stewart's abdominal cavity was abnormally firm. (*Id.*) Dr. Johns immediately ordered a catheterization to drain Stewart's urinary retention. (*Id.* at 8-9.) The medical staff drained more than six liters of fluid from Stewart's bladder and urinary system which dropped Stewart's weight from 188 pounds to 174 pounds. (*Id.* at 9.)

Prison officials transferred Stewart to the Regional Medical Facility at the Northern Nevada Correctional Center ("NNCC"). (*Id.*) While at NNCC, Stewart saw three urologists, two of who were outside specialists. (*Id.*) In November 2015, Stewart eventually underwent surgery for a transurethral resection of the prostate. (*Id.* at 10.) Stewart suffers from stage 3 kidney disease, erectile dysfunction due to the prostate tissue cavity, urine build up, and some pain from the prostatectomy. (*Id.*) Clark and Aranas denied Stewart's grievances. (*Id.* at 11.)

Pursuant to 28 U.S.C. § 1915(A)(a), the District Court entered a screening order allowing Stewart to proceed with Counts I and II for Eighth Amendment deliberate indifference to serious medical needs. (ECF No. 3.) The District Court found that Stewart stated colorable deliberate indifference to serious medical needs claims, based on the allegations that Stewart had been complaining about his urination problems and pain for years but never received adequate pain management or treatment for the problem. (*Id.*)

On June 25, 2019, Defendants filed their motion for summary judgment asserting they are entitled to summary judgment because they were not deliberately indifferent to a serious medical need and, alternatively, Defendants are entitled to qualified immunity. (ECF No. 47.) Stewart opposed the motion (ECF Nos. 55, 58).

## II.  LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine

issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

"This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.   DISCUSSION**

   **A.   Civil Rights Claims under 42 U.S.C. § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the

plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B. Eighth Amendment Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable

if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

**1. Analysis**

According to Defendants, Stewart has a history of benign prostatic hyperplasia ("BPH"), also known as an enlarged prostate. (ECF No. 47 at 3; ECF No. 47-2 at 1.) Defendants assert that BPH is treated through "watchful waiting" and medication. (ECF No. 47 at 3; ECF No. 49-2.) If medication is ineffective, BPH may be managed by intermittent catheterization or an indwelling Foley catheter. (*Id.*) Surgery is generally the last resort. (*Id.*)

1          According to Defendants, Stewart's medical records contain the following information: On December 11, 2014, Stewart complained that medication was making him urinate more frequently and requested the medication be discontinued. (ECF No. 47 at 3.) On January 12, 2015, Stewart was seen by the medical provider and prescribed Flomax for his BPH. (*Id.*) On August 28, 2015, Stewart complained that he was "peeing a lot" and "his legs hurt." (*Id.*) On September 1, 2015, Stewart was scheduled to see a medical doctor and during the visit Stewart consented to the insertion of a Foley catheter for the removal of urine. (*Id.*) On September 18, 2015, Stewart was seen at a urology clinic where the physician recommended he undergo a transurethral resection of the prostate ("TURP"). (*Id.* at 4; ECF No. 47-3 at 5.) Stewart received the TURP procedure in November of 2015. (ECF No. 47 at 4.)

          In their motion for summary judgment, Defendants first argue that Stewart's complaint does not present evidence that the course of treatment he was provided was medically inappropriate, but instead shows that he preferred a different course of treatment—immediate surgery. (*Id.* at 6.) Second, Defendants argue that Stewart was seen regularly by multiple medical providers and received medication for his medical issues. (*Id.*) Next, Defendants argue that a review of Stewart's kites, medical kites, and medical records demonstrates that he did not complain of pain or urination problems from 2014 through 2015. (*Id.*; *See* ECF No. 47-1; 47-2.) Defendants also argue that Stewart's medical records demonstrate that when he complained of pain or urination problems, he received immediate care and his records demonstrate that Defendants took the appropriate medical approach of monitoring his BPH, treating it with medication, and when the situation required, providing Stewart with surgery. (ECF No. 47 at 7.) In sum, Defendants assert the evidence demonstrates that when prison officials were notified of Stewart's pain or urination problems he received prompt treatment and care, and because the evidence demonstrates that prison officials monitored Stewart's medical issue, provided him proper medications, and scheduled surgery when it became

necessary, Defendants were not deliberately indifferent to Stewart's serious medical needs. (*Id.*)

Stewart alleges that Defendants were deliberately indifferent to his serious medical needs by failing to provide adequate treatment related to his prostate issues. (ECF Nos. 55 at 1; 47 at 3.) Stewart alleges that the treatment he received did not eliminate the problem or alleviate his pain, making the course of treatment inadequate. (ECF No. 55 at 1.) Stewart argues that Defendants' years long "watchful waiting" and use of medication was not the proper course of treatment as evidenced by the instant relief he experienced from catherization upon his transfer to WSCC. (*Id.* at 3.) Further, Stewart argues that the chosen course of treatment ultimately resulted in his need for surgery. (*Id.* at 3.) Stewart alleges he has incurred significant damage to his kidneys, stretching of his bladder, and use of a catheter for the rest of his life as a result of the treatment provided by the NDOC. (*Id.* at 2-3.)

As to the objective element of deliberate indifference, it appears to be undisputed that Stewart's BPH constitutes a serious medical need. Thus, the court finds that the objective element of deliberate indifference has been satisfied.

As to the subjective element, Stewart argues that Defendants course of treatment was medically inappropriate and ultimately caused Stewart to receive surgery and suffer life-long medical issues as a result of the improper treatment of his BPH. (ECF No. 55.) Defendants argue that the medical records prove they did not act with deliberate indifference because they provided Stewart with numerous appointments, medication, and eventually, surgery. (ECF No. 47.) Further, Defendants allege that this simply boils down to a disagreement about the choice of treatment, which does not amount to an Eighth Amendment violation. (*Id.*)

First, the medical records provided by Defendants are mostly illegible. (*See* ECF No. 47-2.) Defendants do not provide any further evidence, such as declarations from Defendants regarding Stewart's medical treatment, responses to interrogatories, etc., to support their position. Thus, it is unclear to the court that Stewart's medical needs were

9

in fact adequately addressed. On this basis alone, the court finds Defendants failed to meet their burden of establishing that no material issue of fact exists as to the claim.

However, even if the Defendants' materials were legible, the court finds that a genuine issue of material fact exists as to whether the chosen course of treatment was medically unacceptable under the circumstances and whether the treatment was chosen in conscious disregard of an excessive risk to Stewart's health. Stewart argues that during the entirety of his time at SDCC he received inadequate treatment for his BPH and immediately upon arrival at WSCC he received catheterization, was scheduled to see a urologist, and soon after had surgery. Thus, the court has concerns about whether the chosen course of treatment at SDCC, which appears to be "watchful waiting" and medication, was medically acceptable under these circumstances. It is also unclear whether the delay in providing catherization was medically acceptable under the circumstances. Because Defendants do not address these issues, there is a factual dispute as to whether the chosen treatment and delay in catheterization were medically unacceptable under the circumstances.

Finally, Defendants argue Stewart is unable to prove that Defendants knew of a serious medical need and disregarded the excessive risk to his health. However, given all of the above, it is possible for a jury to find that the chosen course of treatment, and delay in catherization were chosen in conscious disregard of an excessive risk to the Stewart's health.

Based on all of the above, the court cannot say as a matter of law that Defendants were not deliberately indifferent to Stewart's serious medical needs, which ultimately resulted in him undergoing surgery and suffering life-long medical issues. Accordingly, summary judgment should be denied as to Stewart's claim that Defendants were deliberately indifferent to his serious medical need.[3]

---

[3]  The court declines to address Defendants' argument regarding personal participation, which is raised for the first time in the reply brief. (*See* ECF No. 56 at 7-8.)

### C. Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988–89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42.

"[J]udges of the district courts… should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated… is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018). While the court finds a genuine issue of material fact exists as to

whether Stewart's constitutional rights were violated, the court will address the "clearly established" prong at this time.

Defendants contend they are entitled to qualified immunity because there was no clearly established law that treating benign prostatic hyperplasia with medication, and monitoring symptoms, constituted a clear constitutional violation. (ECF No. 47 at 9.) According to Defendants, there must be a case directly on point directing medical professionals within the prison setting to provide a certain course of treatment. This position has expressly been rejected by the Supreme Court and the Ninth Circuit. It is not required that there be a case directly on point before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "For a right to be clearly established it is not necessary that the very action in question have previously been held unlawful." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) "To define the law in question too narrowly would be to allow defendants to define away all potential claims." *Jackson*, 90 F.3d at 332 (citing *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995)).

Defendants' argument that Stewart failed to identify which clearly established law each Defendant violated is unconvincing. Stewart alleges that the chosen course of treatment Defendants provided was medically unacceptable under the circumstances. It is settled law that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment. *Jackson*, 90 F.3d at 332 (9th Cir. 1996) (citing *Estelle*, 429 U.S. at 104). Specifically, it is settled law that choosing a course of treatment that is medically unacceptable under the circumstances and is chosen in conscious disregard of an excessive risk to an inmate's health is a constitutional violation. *Toguchi*, 391 F.3d at 1058 (citing *Jackson*, 90 F.3d at 332). Thus, the constitutional right was clearly established such that reasonable prison officials would have known that providing medically unacceptable treatments constitutes unlawful deliberate

indifference. Accordingly, the court finds that the constitutional right is clearly established, and Defendants are not entitled to qualified immunity.

## IV. CONCLUSION

Based upon the foregoing, the court recommends Defendants' motion for summary judgment (ECF No. 47) be denied. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 47) be **DENIED**.

**DATED**: December 10, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**

13